IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA BARBIERO, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 16-4323 |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**MCHUGH, J.**                                                                                                 July 13, 2017

## MEMORANDUM

This case is an appeal from a denial of Social Security Disability Insurance Benefits. Plaintiff asserts multiple errors by the Administrative Law Judge who decided her case. The matter was referred to a Magistrate Judge, who issued a Report and Recommendation upholding the ALJ's decision. I adopt that thorough and reasoned R & R in all respects but one. Because I conclude that the ALJ ignored or discounted probative evidence that supported Plaintiff's claim without adequately explaining her reasons for doing so, I will remand for further consideration.

**I.  FACTS**

Plaintiff Linda Barbiero filed for disability benefits in 2013, claiming that she was disabled as of June 1, 2012 due to clinical depression, anxiety, stress, short-term memory loss, lack of focus, and chronic aches and pains. Barbiero's initial application was denied. A hearing was held before an ALJ who likewise concluded that Barbiero was not disabled. The ALJ's decision was affirmed by the Social Security Appeals Council, setting the stage for this appeal.

1

The Social Security Administration reviews applications for disability insurance benefits using a five-step inquiry. The finder of fact must determine, in sequence, whether the claimant: (1) is engaged in "substantial gainful activity"; (2) has a severe medical impairment; (3) has an impairment that the Commissioner has found to presumptively preclude gainful activity; (4) can return to previous employment despite their impairment; or (5) has the "residual functional capacity" to perform other work. 20 C.F.R. § 404.1520. Here, the ALJ resolved Barbiero's case at Step 5, concluding that Barbiero was unable to return to her previous occupation as a property manager and billing clerk, but could perform "light work," limited to "routine repetitive tasks, infrequent changes in the work setting, and occasional interaction with co-workers, supervisors, and the public." R. at 25.

In reaching this conclusion, the ALJ placed "great weight" on the opinion of Dr. Ronald Langberg, Ph.D., who conducted a single consultative examination of Barbiero on June 3, 2013, at the behest of the Pennsylvania Bureau of Disability Determination. R. at 30–31. In his examination report, Langberg described Barbiero as "well-nourished, appropriately dressed and groomed, [and] . . . fully cooperative and pleasant." R. at 298. He noted that her "speech was normal in rate, rhythm, and volume," that she "did not appear to be responding to internal stimuli," that her "affective expression was moderately depressed," and that her "thinking was logical, goal-directed, and without loosening of associations." R. at 299. Langberg identified Barbiero's medical conditions as "major depression, recurrent, moderate," "anxiety disorder, not otherwise specified," and "opioid dependence on agonist therapy." R. at 301. Based on Barbiero's affect during the consultation and her performance on memory tests, Langberg concluded that Barbiero's conditions would cause "moderate limitations in her capacity to relate to coworkers, employers, and the general public due to anxiety," and "moderate limitations in

2

her capacity to sustain worklike-related activities." R. at 301–02. Consistent with this assessment, Langberg assigned Barbiero a GAF score of 60.[1] R. at 301.

The ALJ also placed "great weight" on the June 19, 2013, "Mental Residual Functional Capacity Assessment" of Dr. Elizabeth Hoffman, Ph.D. R. at 30–31. Hoffman, a psychological consultant with the Disability Determination Bureau, did not personally examine Barbiero. Instead, she relied on Langberg's analysis to find that, "[d]espite [Barbiero's] limitations, she is able to meet the basic mental demands of simple routine work on a sustained basis."[2] R. at 72. According to the ALJ, Langberg and Hoffman's assessment was "consistent with the evidence as a whole," which showed that Barbiero's "residual symptoms related to her depression and anxiety . . . have not caused any work preclusive limitation." R. at 31.

By contrast, the ALJ found that the assessment of Dale Myrtetus, LCSW, was "not consistent with the evidence in its entirety" and therefore entitled to "little weight." R. at 31. Myrtetus, a licensed therapist who had seen Barbiero roughly twice a month since 2009,[3] submitted a "Mental Medical Source Statement" on December 23, 2014, in which she opined that Barbiero's impairments would make it impossible for her to hold a job. R. at 455. Unlike Langberg and Hoffman, Myrtetus characterized Barbiero's depression and anxiety as "severe," and concluded that "even with proper medication," Barbiero would be "unable to maintain

---

[1] "GAF scores are used by mental clinicians and doctors to rate the social, occupational, and psychological functioning of adults. The GAF scale, designed by the American Psychiatric Association, ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest." *West v. Astrue*, No. CIV. 09-2650, 2010 WL 1659712, at *4 (E.D. Pa. Apr. 26, 2010) (citations omitted). An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* at *4 n.1 (quoting *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000)).

[2] Hoffman noted that Langberg's report was the only opinion evidence on which she relied, and further indicated that she assigned "great weight" to his work in rendering her own opinion. R. at 65, 70, 72. The consistency between Hoffman's and Langberg's reports is therefore unsurprising.

[3] Barbiero saw Myrtetus on an as-needed basis starting in 2007 but began regular treatment in 2009 when her "depression and anxiety got really bad." R. at 53.

3

attention for 2 hours without major distractibility." R. at 455–57. Myrtetus attributed Barbiero's condition, at least in part, to "dramatic emergencies of adult daughter," a 29 year-old mother of two, whose struggles with untreated bipolar disorder and methamphetamine addiction left Barbiero "constantly worried and anticipating next [sic] catastrophe." R. at 457. While noting that Barbiero had been assigned a GAF score of 60 in the past year, Myrtetus put her GAF score as of December 2014 at 45.[4] R. at 455. According to Myrtetus, Barbiero's condition would cause her to miss at least four days of work per month. R. at 459.

Of minimal significance to the ALJ's decision, but of central relevance to this appeal, are the records of Dr. Martha Murry, M.D., a psychiatrist to whom Myrtetus referred Barbiero. Murry treated Barbiero from August 2013 until at least March 2014.[5] She did not render an opinion on Barbiero's residual functional capacity, but did create treatment notes, five of which are contained in the record. Like Langberg, Murry consistently found that Barbiero was appropriately groomed, spoke at a normal rate and volume, and exhibited no signs of psychosis. Unlike Langberg, however, she also observed that, from August through February, Barbiero's mood was "dysphoric"; her affect "constricted," "downcast," and "distracted"; her thinking "tangential," or "circumstantial"; her appearance "anxious" or "very anxious"; and her insight "poor" or "fair." R. at 415–22. Based on these observations, Murry diagnosed Barbiero with "major depression, recurrent, severe," "anxiety disorder, other unspecified," and "ADHD, Predominantly Inattentive Presentation." R. at 418.

---

[4] "A [GAF] score between 41 and 50 indicates serious symptoms . . . or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Watson v. Astrue*, No. CIV.A. 08-1858, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009) (quoting *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000)).

[5] Murry's last treatment note in the record is form March 2014 and indicates that Barbiero was to "return 3–4 weeks, or earlier if needed." R. at 419. It is unclear whether Barbiero continued to see Murry after that date.

4

Murry's treatment notes show that Barbiero's condition fluctuated over time. For instance, in January Barbiero reported that her depression "was worse," and that "this time of yr, (Jan) she always gets down." *Id.* And in February, Barbiero said that she had "highs and lows, and her lows are really bad." R. at 420. At this time, Barbiero described her focus as "very low, worse than it use to be," [sic] and said that she "[couldn't] seem to get out of bed often in the AM." *Id.* By March, however, Barbiero was feeling considerably better, an improvement that she attributed to the end of winter. According to Murry's treatment note from that month, Barbiero still exhibited "signs of mild anxiety" and "some signs of attentional difficulties," but her "[m]ental status [had] no gross abnormalities," and her mood was "euthymic with no signs of depression or manic process." R. at 418. Nevertheless, Murry left undisturbed her diagnoses of anxiety disorder, ADHD, and severe depression.

## II. STANDARD

My review is limited to determining whether "substantial evidence" supports the ALJ's decision. 42 U.S.C. § 405(g). "'Substantial evidence,' . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "A single piece of evidence will not satisfy the substantiality test if the Commissioner ignores, or fails to resolve, a conflict created by countervailing evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

## III. DISCUSSION

I find that the ALJ's reasoning was flawed both because she (1) failed to reasonably explain why Myrtetus's opinion was inconsistent with the record as a whole, and (2) failed to discuss credible medical evidence that corroborated Myrtetus's assessment and undermined that of Langberg and Hoffman. In light of these shortcomings, which I discuss in turn below, I find that the ALJ's decision to favor Langberg and Hoffman's assessment of Barbiero's functional capacity over that of Myrtetus was not supported by substantial evidence.

The ALJ provided three reasons why she deemed Myrtetus's opinion inconsistent with the record as a whole, none of which justifies her assignment of "little weight" to that opinion. First she noted that Barbiero's "opioid dependence has been stable for many years with the use of Suboxone." R. at 31. But neither Barbiero's disability claim, nor Myrtetus's December 2014 assessment of her mental state, was based on opioid addiction. It is therefore unclear why Barbiero's response to agonist therapy weighs against Myrtetus's opinion.[6] Next, the ALJ suggested that Myrtetus's opinion was somehow inconsistent with the record as a whole because "much of [Barbiero's] stress has been related to concerns regarding her adult daughter." *Id*. But Myrtetus herself recognized that Barbiero's stress was largely attributable to her daughter's "dramatic emergencies." R. at 457. Simply noting the apparent source of Barbiero's stress, as the ALJ did here, in no way undermines Myrtetus's finding that Barbiero was incapable of **coping** with that stress. Finally, the ALJ found that, contrary to Myrtetus's opinion, Barbiero's "depression and anxiety have shown improvement with medications." R. at 31. This conclusion appears to be based on three pieces of evidence: Murry's note from March 2014, which

---

[6] The treatment notes from Dr. Lisa Ducker, D.O., who treated Barbiero's opioid addiction from 2008 through 2014, do not shed light on Barbiero's mental health. Ducker frequently, though not always, checked blanks on a pre-printed "progress note" form next to the words "normal affect" and "appropriately attired," but otherwise offered no commentary on Barbiero's mood or appearance.

6

documented a marked improvement in Barbiero's condition, and two roughly contemporaneous notes showing that Barbiero visited family in Arizona during April. Barbiero argues that in light of the nature of her condition, this roughly two-month snapshot "cannot be used as the final yardstick in assessing [her] functioning." I agree. Both Langberg and Murry diagnosed Barbiero with "major depressive disorder, *recurrent*"—a condition characterized by periods of normal mood, punctuated by depressive episodes. Similarly, Murry's treatment notes suggest that Barbiero's mental health varied over time and grew worse during the winter. Given the ebb and flow of Barbiero's depression, evidence that her symptoms abated does not render Myrtetus's later-filed opinion inconsistent with the record as a whole.

More fundamentally, the record supports Langberg and Hoffman's opinion—and undermines Myrtetus's opinion—only if one ignores or discounts the notes of Murry, a treating psychiatrist. Those notes partially corroborate Myrtetus's opinion and flatly contradict that of Langberg and Hoffman. For instance, while Langberg and Hoffman characterized Barbiero's depression as "moderate," Murry and Myrtetus diagnosed her condition as "severe." Similarly, Langberg and Hoffman did not find that Barbiero had a medically recognized inability to maintain concentration and focus, while Murry and Myrtetus diagnosed her with ADHD. Finally, Murry's observations of Barbiero over a six-month period differ sharply from Langberg's observations during a one-time consultative examination. Where Langberg found Barbiero's "affective expression" to be "moderately depressed," her thinking "logical, goal-directed, and without loosening of associations," her insight "good," and her concentration without "significant impairment," R. at 299–302, Murry's notes from August through February consistently describe Barbiero as "anxious" or "very anxious," "constricted," and "dysphoric," and her insight as "poor" or "fair." R. at 415–22. Murry's records also show that in August and

7

January, Barbiero's thinking was "tangential," R at 415, 422, and that even as her depression lifted in March, she continued to have "attentional difficulties" that required pharmacotherapy. R. at 418.

The ALJ is not required "to make reference to every relevant treatment note," *Fargnoli*, 247 F.3d at 42, but Murry's observations and diagnoses shed light on the nature and severity of Barbiero's mental impairments and therefore go to the very heart of the disability determination. By finding that Langberg and Hoffman's opinion was consistent with, and Myrtetus's opinion inconsistent with, the record as a whole, for all practical purposes the ALJ brushed aside Murry's records without adequately explaining her decision to do so. The ALJ's failure to discuss the medical import of Murry's observations and diagnoses is particularly troubling for two reasons. First, Murry's treatment records, like Myrtetus's assessment, post-date Langberg and Hoffman's assessment and therefore suggest a worsening of Barbiero's condition—a possibility that the ALJ did not consider. Second, Murry was a treating psychiatrist who had regular contact with Barbiero over a period of several months. By contrast, Langberg only examined Barbiero once and Hoffman did not examine her all.

"Where, as here, the opinion of a treating physician[7] conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales*, 225 F.3d at 317 (citations omitted). This rule has been set forth in multiple decisions from the Court of Appeals going back more

---

[7] The regulations that govern Barbiero's claim provide that a "treating source" is an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.927 (2012). As a physician, Murry was an acceptable medical source. "Medical opinions," in turn, are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id*.

than three decades.[8] It is easily applied where a remand is ordered based on an ALJ's failure to provide reasons, but that is not the case here. The challenge is how to apply the "wrong reasons" standard in light of a district judge's limited scope of review. In the only decision that seems to elaborate on that standard, the Third Circuit stated that "'[s]ubstantial evidence' can only be described as supporting evidence in relation to all of the other evidence in the record," *Cotter*, 642 F.2d at 706, and the question is whether the ALJ's ultimate conclusion on a controlling issue can be "harmonized" with the contrary evidence in the record. *Id.* at 706 n.9.

Disagreement on the merits is not my prerogative. I may only evaluate whether the ALJ sufficiently accounted for all of the evidence with a logic that withstands scrutiny. Here, in light of the material contradictions in the record, the ALJ's failure adequately to explain her decision to credit Langberg and Hoffman's opinion while discounting Myrtetus's opinion requires that I remand this case. I do not hold that Myrtetus's assessment is entitled to greater weight than that of Langberg and Hoffman, only that the ALJ's reasons for discounting it must logically support her conclusion and must adequately reconcile credible record evidence that points in the opposite direction.

Finally, the ALJ noted in passing that Myrtetus, a licensed therapist, was not a "qualified medical source," under the governing regulations in place at the time of Barbiero's case. 20 C.F.R. § 404.1513 (2013). It does not appear, however, that the ALJ discounted Myrtetus's opinion because of these regulations. In relevant part, § 404.1513 provides that therapists' opinions are not entitled to the presumption of controlling weight accorded to opinions from "qualified medical sources" and cannot be used as "evidence to establish an impairment." But

---

[8] The Court of Appeals first articulated this standard in *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981) (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

9

there was no dispute as to whether Barbiero was impaired. Rather, the ALJ resolved this case at Step 5, concluding that Barbiero could return to work despite her impairment. Moreover, although Barbiero's opinion was not entitled to a presumption of controlling weight, a Social Security Administration Policy Interpretation Ruling that governed the ALJ's handling of this case provided that a therapist's opinions "should be evaluated on key issues such as impairment severity and functional effects"—the only issues now in dispute. SSR 06-03P (S.S.A. Aug. 9, 2006). In any case, the ALJ did not state that she assigned "little weight" to Myrtetus's assessment because Myrtetus was a therapist, and she explicitly acknowledged that Myrtetus's assessment "must be considered." R. at 31. The oblique reference to § 404.1513 therefore does not defeat Barbiero's request for review.

## IV. CONCLUSION

The administrative record contains evidence from two mental health professionals, one a psychiatrist, both of whom treated Barbiero over an extended period of time and concluded that she suffered from severe mental impairments. Although the ALJ was not required to give controlling weight to this evidence, something more than conclusory statements was required before she could discount it in favor of conflicting opinions rendered by non-treating government experts based upon a single exam. Accordingly, this case will be remanded for further consideration. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge